# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAWAD ALBU AMER,<br>Plaintiff,<br>v.<br>JOSHUA HARRIS, *et al.*,<br>Defendants. | Case No.: 25-cv-3103-BJC-DEB<br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br>**[ECF Nos. 6, 9-11]** |

Plaintiff Jawad Albu Amer ("Plaintiff") filed suit against Defendants Joshua Harris, Chargé d'Affaires at the U.S. Embassy in Iraq, and Marco Rubio, Secretary of the U.S. Department of State (collectively, "Defendants"). ECF No. 1. Before the Court is Defendants' Motion to Dismiss. ECF No. 6. Plaintiff filed an Opposition, ECF No. 9, to which Defendants filed a Reply. ECF No. 10. Plaintiff also filed a Notice of Supplemental Authority regarding a decision recently issued, *Dorcas Int'l Inst. of Rhode Island et al. v. U.S. Citizenship and Immigration Services et al.*, 2026 WL 1622708 (D.R.I. June 5, 2026). ECF No. 11. After consideration of the filed materials, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

### A. Factual Background

Plaintiff Jawad Albu Amer is a United States citizen, currently residing in California with his wife. ECF No. 1 at ¶¶ 1, 7, 12. Plaintiff has two sons, Saif Abu-Amer and Faisal

Alboo Amir, who currently reside in Iraq and are Iraqi nationals. *Id*. at ¶¶ 1-2, 15-16. On September 30, 2015, Plaintiff filed with the United States Citizen and Immigration Services ("USCIS") I-130 visa petitions for his sons. *Id*. at ¶¶ 15-16. Plaintiff contends that he filed these visa petitions so that his sons could "obtain lawful permanent resident status" and join Plaintiff and his wife in the United States. *Id*. at ¶ 17. Plaintiff claims that he and his wife are "elderly and live alone," "both suffer[ing] from serious, chronic, and worsening medical conditions," and that Plaintiff's sons "experience constant guilt and worry over their inability to provide care and support" for their parents. *Id*. at ¶ 7.

On April 21, 2016, USCIS approved Plaintiff's sons' visa petitions. ECF No. 1 at ¶ 16. Seven years later, on September 28, 2023, Plaintiff's sons' applications were transferred from the U.S. Consulate General in Qatar to the U.S. Embassy in Iraq, then, on the same day, transferred to the U.S. Embassy in Turkey. *Id*. at ¶ 18. Between October 2, 2023 and March 25, 2024, the cases were transferred three more times before they were eventually expedited on August 20, 2024. *Id*. at ¶¶ 19-22.

On November 26, 2024, Plaintiff's sons were interviewed by the U.S. Embassy in Iraq, during which they learned "their cases were placed in administrative processing pursuant to the Immigration and Nationality Act ('INA') § 221(g)." ECF No. 1 at ¶ 24; ECF No. 1-4 (Ex. 3). That same day, the U.S. Embassy in Iraq requested that Plaintiff's sons fill in the attachment with the additional required information. ECF No. 1 at ¶ 24; ECF No. 1-5 (Ex. 4) at 31. Plaintiff's sons filled in the requested attachment and sent it back to the U.S. Embassy in Iraq on December 1, 2024. ECF No. 1 at ¶ 24; ECF No. 1-5 (Ex. 4) at 31. On December 5, 2024, the U.S. Embassy in Iraq sent another email requesting that Plaintiff's sons complete the attachment, which they submitted again on December 6, 2024. ECF No. 1 at ¶ 25; ECF No. 1-4 (Ex. 4) at 31-32.

Following submission of the additional material, Plaintiff and his sons continuously inquired as to the status of the visa applications. *See* ECF No. 1 at ¶¶ 27-33. Between January 26, 2025 and August 29, 2025, Plaintiff and his sons reached out to the U.S. Embassy in Iraq five times, where they received similar responses stating, for example:

"Both cases are in administrative processing. Unfortunately, we cannot predict how long this administrative review will take. As soon as we have concluded this processing, we will contact you." *Id*. at ¶ 28; *see also id*. at ¶¶ 27, 30-32.

A decade after USCIS approved Plaintiff's sons' visa petitions and nearly two years after the visa applications were placed in administrative processing, Plaintiff seeks an order compelling Defendants to adjudicate Plaintiff's sons' visa applications. Plaintiff alleges that Defendants' delay in adjudicating his sons' visa applications has prolonged their separation and has caused "emotional, personal and financial hardship." ECF No. 1 at ¶ 6. For example, as the situation in Iraq worsens, Plaintiff claims that he lives in "persistent fear for his sons safety" as they have been forced to "flee their home in Baghdad and relocate to Erbil in search of safety and political stability." *Id*. at ¶ 7. All the while, Plaintiff contends that he and his wife's health continue to decline as they battle "serious, chronic, and worsening medical conditions" on their own without their sons. *Id*. Due to financial constraints and Plaintiff's prior work for the United States military, Plaintiff further alleges that he cannot travel frequently to Iraq and has only been able to see his sons twice in Iraq since 2015. *Id*. at ¶¶ 7-8.

**B. Procedural Posture**

On November 12, 2025, nearly a year following Plaintiff's sons' interview with the U.S. Embassy in Iraq, Plaintiff filed the complaint, seeking this Court to mandate Defendants to "process Plaintiff's sons' visa applications as soon as reasonably possible[.]" ECF No. 1 at 15. Plaintiff seeks relief pursuant to 5 U.S.C. § 706(1) of the Administrative Procedure Act ("APA") and Mandamus Act, 28 U.S.C. § 1361. *See id*. at ¶¶ 34-45. Plaintiff also alleges that Defendants' conduct, the failure to adjudicate his sons' visa applications within a reasonable time, violates Plaintiff's substantive and procedural due process rights under the Fifth Amendment of the Constitution. *See id*. at ¶¶ 46-50.

On January 20, 2026, Defendants filed this instant Motion, seeking to dismiss the complaint in its entirety under Rules 12(b)(1) and 12(b)(6). ECF No. 6. On February 17, 2026, Plaintiff filed his Opposition to Defendants' Motion to Dismiss, ECF No. 9, and

Defendants filed their Reply on February 24, 2026. ECF No. 10. On June 25, 2026, Plaintiff filed a Notice of Supplemental Authority in support of his Opposition to Defendants' Motion to Dismiss. ECF No. 11.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994) (citation omitted). "It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted). Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A party has two methods to challenge subject-matter jurisdiction—a facial or factual attack.

"In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). By contrast, a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. For these challenges, courts "need not presume the truthfulness of the plaintiff's allegations" and can "review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. (citation omitted). Dismissal under Rule 12(b)(1) is warranted "'where the alleged claim under the [C]onstitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous.'" *Id*. (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Rule 12(b)(6) is read in conjunction with Rule 8(a)[.]" *Zixiang Li v. Kerry*, 710 F.3d 995, 998 (9th Cir.

2013). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not accept legal conclusions as true merely "because they are cast in the form of factual allegations." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citation omitted). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

If a complaint fails to state a plausible claim for relief, courts are instructed to grant leave to amend unless the "complaint could not be saved by any amendment." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020) (citation omitted). But, "if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend." *Easter v. Samuel*, 2024 WL 5413115, at *3 (C.D. Cal. Nov. 27, 2024) (citing *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment)); *see also V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC*, 946 F.3d 542, 547 (9th Cir. 2019) ("A district court acts within its discretion to deny leave to amend when the amendment would be futile") (quotation omitted).

## DISCUSSION

Plaintiff's central complaint is that Defendants' failure to adjudicate Plaintiff's sons' visa applications in a reasonable time is a violation of Section 706(1) of the APA and/or the Mandamus Act. *See generally* ECF No. 1 at ¶¶ 34-45. Plaintiff also alleges that Defendants' failure to adjudicate Plaintiff's sons' visa applications within a reasonable time constitutes a violation of his substantive and procedural due process rights. *Id*. at ¶¶ 46-50.

### A. The Interaction between Mandamus and APA Claims

Section 706(1) of the APA allows courts to compel unreasonably delayed agency action "when the agency (1) has 'a clear, certain and mandatory duty' … and (2) has unreasonably delayed in performing such duty." *Vaz v. Neal*, 33 F.4th 1131, 1336 (9th Cir. 2022) (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021)); *see also* 5 U.S.C. § 706(1). Similarly, under the Mandamus Act, a court may compel agency action upon a finding that "(1) the plaintiff's claim is clear and certain; (2) the duty is 'ministerial and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1251 (S.D. Cal. 2024) (quoting *Or. Nat'l Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995) (cleaned up). As "the relief sought under the Mandamus Act and under § 706(1) of the APA is 'essentially the same,'" *id*. (quoting *Indep. Mining Co. v. Babbit*, 105 F.3d 502, 507 (9th Cir. 1997), a court "may elect to analyze the APA claim only." *Vaz*, 33 F.4th at 1135.

Here, as Plaintiff notes, "'courts have consistently treated a claim under the Mandamus Act as, in essence, a claim for relief under § 706 of the APA.'" ECF No. 9 at 30 (quoting *Omar v. Blinken*, 756 F. Supp. 3d 520, 532 (S.D. Ohio 2024)). Accordingly, the Court will only analyze Plaintiff's APA claim. *See Shahijani v. Laitinen*, 2023 WL 6889774, at *2 (C.D. Cal. Oct. 6, 2023) ("Where, as here, a plaintiff seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze both claims under the APA only."). Should Plaintiff's APA claim fail, then Plaintiff's "claim under the Mandamus Act fails as well." *Davila v. Cohan*, 2024 WL 711618, at *4 (S.D. Cal. Feb.

21, 2024) (citing *Vaz*, 33 F.4th at 1138-39).

**B. Subject Matter Jurisdiction Exists Over Plaintiff's Claims**

Plaintiff's claims—violations under the APA and Fifth Amendment—are federal questions arising under the Constitution and 28 U.S.C. § 1331. *See Vaz*, 33 F.4th at 1138-39 (finding APA claims "arise[] under the laws of the United States, and the district court ha[s] subject matter jurisdiction"). Accordingly, this Court has subject matter jurisdiction over Plaintiff's claims. *See Kokkonen*, 511 U.S. at 377. Therefore, the Court rejects Defendants' argument that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction.

The Court will proceed to evaluate whether Plaintiff's complaint states a plausible claim for relief under the APA and for violations of due process.

**C. A Mandatory Duty Exists To Adjudicate Visa Applications To Finality**

Defendants assert that there is no mandatory duty within the meaning of the APA that requires visa applications to be further adjudicated once it has been refused by a consular officer under INA § 221(g), 8 U.S.C. § 1201(g). ECF No. 6 at 2; *see also* ECF No. 6-1 at ¶¶ 4-5 (Plaintiff's sons' visa applications were refused under INA § 221(g), 8 U.S.C. § 1201(g)). Defendants rely on an unpublished opinion issued by the Circuit Court of Appeals for the District of Columbia that found a consular officer issued a "final decision" by refusing the visa application at the interview and that any further reconsideration while the application was placed in administrative processing was only discretionary. *Karimova v. Abate*, 2024 WL 3517852, at *2-4 (D.C. Cir. July 24, 2024). This Court recently rejected Defendants' argument in a separate matter regarding a similar issue. *See Kayami v. Kvien*, Case No. 25-cv-2205-BJC-GC, ECF No. 14 at 7-8 (S.D. Cal. Sept. 28, 2026) (order granting in part and denying in part defendants' motion to dismiss). For the same reasons stated in that Order, the Court declines to follow *Karimova* and finds that Defendants have a mandatory duty to fully adjudicate visa applications under Section 555(b).

Section 555(b) clearly states: "With due regard for the convenience and necessity of

the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." This commanding language imposes a nondiscretionary, though general, duty upon agencies to fully adjudicate visa applications within a reasonable time. *Mirbod v. Blinken*, 2025 WL 418518, at *3 (S.D. Cal. Feb. 6, 2025) (Section 555(b) "'creates a duty that some courts have held can be enforced through 5 U.S.C. § 706(1).'") (quoting *Mosayebian v. Blinken*, 2024 WL 3558378, at *4 (S.D. Cal. July 25, 2024)); *see Andalib v. United States*, 2024 WL 685945, at *4 (C.D. Cal. Feb. 9, 2024) ("Section 555(b) generally requires agencies to 'conclude a matter presented to it' 'within a reasonable time,' a statement which has been interpreted to mean that an agency has a duty to fully respond to matters that are presented to it under its internal processes. The use of the term 'shall' in this statute is mandatory language that usually connotes a requirement.") (internal citations and quotations omitted). Accordingly, an agency cannot meet their duty to "conclude" a visa application by placing it in administrative processing for further review.

Here, in addition to Section 555(b), Plaintiff contends that Defendants also have a non-discretionary duty to act under 8 U.S.C. § 1202(b) of the Immigration and Nationality Act ("INA"). *See* ECF No. 1 at ¶ 35; ECF No. 9 at 15. Section 1202(b) provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." Defendants make two counterarguments, neither of which is persuasive. First, Defendants claim that, if any duty exists under Section 1202(b), it does not apply because Plaintiff's sons' "immigrant visa applications were executed when they appeared at their consular interviews on November 26, 2024." ECF No. 6 at 8; *see also* ECF No. 10 at 4 (same). This argument rests on the assumption that the Court would adopt *Karimova*'s holding that any duty to adjudicate a visa to finality is met once the consular officer decides to either issue or refuse the visa, regardless of whether the application is placed in administrative processing. But, as this Court declines to adopt *Karimova*'s reasoning, it also rejects Defendants' argument that any duty pursuant to Section 1202(b) is fulfilled "when [applicants] appear[] at their consular interviews." ECF No. 6 at 8.

In the alternative, Defendants also appear to argue that the duty to adjudicate a visa application under Section 1202(b) does not arise until after the visa applicant appears before a consular officer. *Id*. (citing *Sedighi v. Blinken*, 2024 WL 3439409, at *3 (S.D. Cal. Apr. 19, 2024)).[1] Yet, in making this argument, Defendants concede that they owe a duty to Plaintiff under Section 1202(b). It is undisputed that Plaintiff's sons *already* appeared for their consular officer interview on November 26, 2024. *See* ECF No. 1 at ¶ 23; ECF No. 6-1 at ¶¶ 4-5. Therefore, by Defendants' own logic, they now have a mandatory duty to fully adjudicate Plaintiff's sons' visa applications under Section 1202(b).

Under either theory, this Court finds that Defendants have a mandatory duty to adjudicate visa applications to finality under Section 555(b) and/or Section 1202(b). Accordingly, this Court now must determine whether the delay in adjudicating Plaintiffs' son's visa applications is unreasonable.

**D. Plaintiff's Unreasonable Delay Claim Fails**

In visa-application cases, to determine if the delay is unreasonable, courts in the Ninth Circuit apply the six-factor "*TRAC*" balancing test. *See Vaz*, 33 F.4th at 1137 (citing *Telecomm. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC"*). These factors include:

(1) the time agencies take to make decisions must be governed by a 'rule of reason';
(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme must supply content for this rule of reason;

---

[1] Courts are split as to whether Section 1202(b)'s duty to act on a visa application attaches when a formal visa application is made or only after the applicant has appeared for the consular interview. *See Mojtabavi v. Blinken*, 2024 WL 5316832, at * 4 (C.D. Cal. Oct. 22, 2024) (collecting and analyzing cases). The Court need not decide when Section 1202(b)'s duty attaches because, as noted, the consular interview already occurred.

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

*Id*. (quoting *TRAC*, 750 F.2d at 80 ) (cleaned up). All factors must be considered, but the first factor—the rule of reason—is the most important factor to determine unreasonable delay. *See In re A Cmty. Voice v. EPA*, 878 F.3d 779, 786 (9th Cir. 2017).

Plaintiff argues that the use of the *TRAC* test is inappropriate at this stage, presumably because it is a fact-intensive analysis. ECF No. 9 at 19. While some courts have declined to resolve APA claims alleging unreasonable delay at the pleading stage, *see Tamjidi v. Blinken*, 2024 WL 4328813, at *5 (C.D. Cal. Aug. 27, 2024), "a complaint must still include sufficient factual matter 'to state a claim to relief that is plausible on its face.'" *Shahijani*, 2023 WL 6889774, at *3 (quoting *Kayvan v. Pompeo*, 2020 WL 5834805, at *8 (N.D. Cal. July 28, 2020) (applying *TRAC* test on a motion to dismiss in immigration visa case); *see also Mosayebian*, 2024 WL 3558587, at *6 ("[P]laintiffs in visa-application cases must nevertheless plausibly allege unreasonable delay under the *TRAC* factors to survive a motion to dismiss.") (citing *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 338-40 (D.C. Cir. 2023)). Accordingly, the Court will proceed with analyzing and weighing the *TRAC* factors in determining whether Plaintiff sufficiently alleges unreasonable delay.

**1. Factors One and Two: Rule of Reason and Congressional Timetable**

Although the first factor is regarded as the most important of the six, the first and second factors are often considered together to determine whether the delay is reasonable. *Mirbod*, 2025 WL 418518, at *3 (citing *Lee v. Blinken*, 2024 WL 639635, at *5 (D.D.C.

Feb. 15, 2024)). Reasonableness of delay requires courts to consider "both the length of the delay and the reasons for the delay." *Shahijani*, 2023 WL 6889774, at *4 (citing *Poursohi v. Blinken*, 2021 WL 5331446, at *5 (N.D. Cal. Nov. 16, 2021)). This includes a review of whether Congress has provided a "timetable or other indication of speed with which it expects the agency to proceed in the enabling statute[.]" *TRAC*, 750 F.2d at 80. However, "reasonableness" of delay "'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part … upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" *Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 (D.D.C. 2021) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).

The Court starts the analysis by resolving the length of delay at issue. Plaintiff filed this suit nearly twelve months after his sons' visa applications were placed in administrative processing. *See* ECF No. 1 at ¶¶ 23-24. Defendants argue that a twelve-month delay is not unreasonable. ECF No. 6 at 8. However, twelve months is no longer the correct measurement for length of delay. The length of delay in visa application processing is measured from the last agency action to the issuance of the court's opinion. *Nusrat v. Blinken*, 2022 WL 4103860, at *6 & n.6 (D.D.C. Sept. 8, 2022) (citing *Mahmood v. U.S. Dep't of Homland Sec.*, 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021)); *see also Jazi v. Rubio*, 2025 WL 1222499, at *3 (S.D. Cal. Apr. 25, 2025) ("In the context of unreasonable delay involving visa application processing, delay is measured from the time that Plaintiffs attended the interview, not the time that they filed the petition.") (citing *Ferdowski v. Blinken*, 2024 WL 685912, at *4 & n.26 (C.D. Cal. Feb. 12, 2024)).

Here, Plaintiff filed visa petitions on behalf of his sons on September 30, 2015, and, nine years later, his sons interviewed with the consular officer at the U.S. Embassy in Iraq on November 26, 2024. ECF No. 1 at ¶¶ 15-16, 23. The consular officer refused to issue the visas following the interview and then placed the visa applications in administrative processing. *Id.* at ¶¶ 23-25. The last agency action is, therefore, November 26, 2024.

Thus, the delay in adjudicating the visa applications is appropriately measured from November 26, 2024, to the issuance of this court's opinion. *See Nusrat*, 2022 WL 4103860, at *6 & n.6. The length of delay is now approximately 22 months.

To determine if this length of delay is unreasonable, courts first look to see whether there is a statute or regulation establishing a congressional timeline for visa adjudications. Defendants contend that "Congress has provided no timetable" for adjudicating visas. ECF No. 6 at 10. By contrast, Plaintiff claims that there are two statutes that provide a congressional timetable: 8 U.S.C. § 1571(b) and 5 U.S.C. § 555(b). *See* ECF No. 9 at 21-22. The Court disagrees with Plaintiff.

Section 1571(b) states: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application[.]" According to Plaintiff, based on this timeline, his sons' visa applications should have been completed by May 26, 2025, following their initial interview or—at the latest—June 3, 2025, after they submitted the additional information requested by the U.S. Embassy in Iraq. ECF No. 9 at 22. But the Ninth Circuit has interpreted "*sense of Congress*" language as "precatory provisions" that cannot create binding obligations on a government agency. *Orkin v. Taylor*, 487 F.3d 734, 739 (9th Cir. 2007) (citing *Yang v. Cal. Dept. of Soc. Servs.*, 183 F.3d 953, 958-59 (9th Cir. 1999) (emphasis added)); *see also Shahijani*, 2023 WL 6889774, at *4 (finding the language in 8 U.S.C. § 1571(b) does not constitute a "mandatory timetable"). Indeed, Plaintiff admits that Section 1571(b) is a "non-mandatory" provision, expressing only, at most, a "contemplated timeline." ECF No. 9 at 21-22.

Plaintiff also argues that, should the Court find Section 1571(b) does not supply a congressional yardstick, Section 555(b) works in the alternative. ECF No. 9 at 23. For support, Plaintiff relies on three cases, all of which find that a *mandatory duty* to adjudicate visa applications "within a reasonable time" exists under Section 555(b)—not that Section 555(b)'s language constitutes a congressional timetable. *See, e.g.*, *Mobayen v. Blinken*, 780 F.Supp.3d 969, 981 (C.D. Cal. 2025) (finding Section 555(b) imposes a duty on

consular officers to "render a final adjudication on visa applications 'within a reasonable time'") (citation and internal quotations omitted); *Soroush v. Blinken*, 2025 WL 305837, at *5-6 (C.D. Cal. Jan. 24, 2025) ("'Section 555(b) generally requires … the processing of a visa application within a reasonable time under the APA," but "it does not contain a timeframe in which the agency must act'") (quoting *Andalib*, 2024 WL 685945, at *4); *Network Optix Inc. v. Rubio*, 2025 WL 1122358, at *4 (C.D. Cal. Feb. 14, 2025) (finding plaintiffs reliance on Section 555(b) was "enough to allege a plausible legal theory of a mandatory duty enforceable" under the APA"). While Section 555(b) may indicate Congress's desire "that agencies *should* act within reasonable time frames," *see TRAC*, 750 F.2d at 77 (emphasis added), it can hardly be considered a congressional timeframe. The Court thus finds that neither 8 U.S.C. § 1571(b) nor 5 U.S.C. § 555(b) constitutes a "statutory or regulatory timeframe within which the State Department must adjudicate visas." *Jazi*, 2025 WL 1222499, at *3; *see also Barazandeh v. U.S. Dep't of State*, 2024 WL 341166, at *8 (D.D.C. Jan. 30, 2024) ("[N]o statutory or regulatory timeline exists within which the State Department or a consular office must re-adjudicate visa applications.") (citation omitted)); *Tekle v. Blinken*, 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) ("Congress did not provide a statutory deadline to complete processing or adjudication of visa applications.").

With no congressionally mandated timetable for adjudicating family immigrant visa applications, the Court relies on case law to determine whether the length of delay is unreasonable. Although there is no bright line in which delay automatically becomes unreasonable, typically a delay of less than four years is not unreasonable. *Ortiz v. U.S. Dep't of* State, 2023 WL 4407569, at *8 (D. Idaho July 7, 2023) ("Generally, courts have found 'immigration delays in excess of five, six, [and] seven years are unreasonable, while those between three to five years are often not unreasonable.'" (quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 69-70 (D.D.C. 2022)). As noted above, it has been 22 months since the last agency action. In the immigration context, courts have routinely determined that similar (or even more significant delays) are not unreasonable. *See, e.g*, *Mosayebian*, 2024

WL 3558371, at *8 (finding "application … mired in administrative processing for approximately eleven months" is not unreasonable delayed); *Rezai v. Blinken*, 2024 WL 4830988, at *4 (S.D. Cal. Nov. 18, 2024) (finding "post-refusal adjudication … pending in administrative processing for nineteen months" was not unreasonable); *Nusrat*, 2022 WL 4103860, at *6 (dismissing unreasonable delay claim where visa application remained in administrative processing for thirty-two months); *Yavari v. Pompeo*, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (noting immigration delays between three and five years are often found reasonable); *Islam v. Heinauer*, 2011 WL 2066661, at *8 (N.D. Cal. May 25, 2011) (point of unreasonableness had "not yet come" following three-year delay in immigration application); *Ghadami v. United States Dep't of Homeland Sec.*, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (finding "many courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law").

Nonetheless, length of delay is not dispositive. The Court must also consider the reason for the delay in adjudicating Plaintiff's sons' visa applications. Plaintiff claims that "Defendants fail to provide any evidence" explaining the reason for the delay. ECF No. 9 at 20. But, in making this claim, Plaintiff entirely ignores Defendants' position that visa applications placed in administrative processing take time to review because of the required additional security screening. ECF No. 6 at 10-11. There is, thus, a clear and identifiable rationale behind Defendants' delay: "the Department appears to have needed additional information to reach a decision" and to adequately vet the visa applications. *Davila*, 2024 WL 711618, at *6 (finding delay in administrative processing "to gather additional information is not facially unreasonable"). As Defendants explain, "the decision-making at issue here implicates foreign affairs," which are inherently complex and time-consuming. ECF No. 6 at 11. The Court finds that delay stemming from additional security screening is not unreasonable. Given that the length of delay, 22 months, does not exceed a period of time considered "unreasonable," this Court finds no further explanation is necessary to justify the underlying delay. Factors one and two, thus, strongly favor Defendants because neither the length nor reason for the delay is unreasonable.

This Court takes the opportunity to address Plaintiff's supplemental authority addressing Defendants' arguments allegedly "implicated" by a recently issued opinion—*Dorcas Int'l Inst. of Rhode Island et al. v. U.S. Citizenship and Immigration Services et al.*, 834 F. Supp. 3d 242 (D.R.I. 2026). *See* ECF No. 11 at 1. In *Dorcas*, the court vacated four USCIS policies—the Global Asylum Hold Policy, the Benefits Hold Policy, the Comprehensive Re-Review Policy, and the Country-Specific Factors Policy—that had the effect of "placing an indefinite pause on the adjudication of immigration benefit requests for individuals from" 39 countries, including Iraq, reasoning that such policies violated both immigration and administrative laws and were, thus, contrary to law and arbitrary and capricious. *See* 834 F. Supp. 3d at 263-64, 325. Although it is not entirely clear to the Court, it appears Plaintiff submitted this authority to make additional argument that, *if* Defendants delayed Plaintiff's sons' visa applications pursuant to the policies vacated in *Dorcas*, then the underlying reason for the delay is inherently invalid. *See* ECF No. 11 at 3. This Court is not persuaded for two reasons.

First, Plaintiff never alleged that any USCIS policy—let alone the four policies vacated in *Dorcas*—was the reason behind Defendants' delay or that such policies were contrary to law. *See* ECF No. 1. Although Plaintiff makes a passing reference to a USCIS policy—Immigrant Visa Processing Updates for Nationalities At High Risk of Public Benefits Usage ("High Risk of Public Benefits Usage Policy")—in his Opposition, *see* ECF No. 9 at 11, this policy was not at issue in *Dorcas*. Indeed, it appears Plaintiff only referenced the High Risk of Public Benefits Usage Policy to submit an affidavit to "assure the Court and Defendants that his sons will not become public charges upon their entry" into the United States. ECF No. 9 at 11; ECF No. 9-2 (Jawad Albu Amer Affidavit) at 2-3.[2] But more importantly, Plaintiff has neither made the argument nor presented evidence

[2] To the extent the High Risk of Public Benefits Usage Policy did impact Plaintiff's sons' visa applications, this USCIS policy was recently vacated by a separate court—*Catholic Legal Immigration Network, Inc. v. Rubio ("CLINIC")*, 2026 WL 2455099 (S.D.N.Y. Aug.

that any USCIS policy, vacated or otherwise, is the reason behind the delay in adjudicating his sons' visa applications. And Defendants have never relied on a now-vacated USCIS policy to justify their delay. Indeed, Plaintiff's sons' visa applications were placed in administrative processing before these USCIS policies, including the High Risk of Public Benefits Usage Policy, were in effect. ECF No. 1 at ¶¶ 23-24; ECF No. 9-1 at 2 (effective as of January 21, 2026).

**2. Factors Three and Five: Nature of Interest**

Factors three and five are often considered together because both factors focus on the harm suffered by the plaintiff. *See, e.g.*, *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020). Despite Defendants' claim that Plaintiff's situation is "not unique," ECF No. 6 at 12, this Court disagrees. Plaintiff sufficiently alleges that "Defendants' delay has separated Plaintiff and his sons since 2015," causing "emotional, personal and financial hardship." ECF No. 1 at ¶ 6. For example, Plaintiff alleges that the prolonged delay from his sons has caused hardship for him and his wife because they live alone in the United States and "both suffer from serious, chronic, and worsening medical conditions." *Id*. at ¶ 7. Specifically, Plaintiff's wife suffers from long-term illnesses stemming from her breast cancer diagnosis, whereas Plaintiff was recently diagnosed with skin cancer. *Id*. Yet, without their sons, Plaintiff and his wife have no familial support. *Id*. As a result, Plaintiff serves as the primary caregiver to his wife, sometimes at the expense of his own health. *Id*. For example, Plaintiff has had to postpone necessary surgical treatment because Plaintiff has no one to help him or his wife while he recovers. ECF No. 1 at ¶ 7. Meanwhile, Plaintiff's sons "experience constant guilt and worry over their inability to provide care and support" for their parents. *Id*. Likewise, Plaintiff "lives in persistent fear for his sons' safety" as the situation in Iraq deteriorates. *Id*.

---

21, 2026). However, on September 15, 2026, the Government filed an appeal with the Second Circuit, challenging the *CLINIC* Court's holding that the policy was contrary to law.

Plaintiff filed the immigration petitions for his sons in 2015, eleven years ago, so they may lawfully immigrate to the United States to reunite their family. Defendants' delay has prolonged that reunification. Prolonged "[s]eparation from loved ones is an 'undeniably significant' interest in immigration cases." *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 14 (D.D.C. 2024) (quoting *Didban*, 435 F. Supp. 3d at 177). Thus, factors three and five weigh strongly in Plaintiff's favor.

**3. Factor Four: Effect on Competing Priorities**

Factor four considers the "effect of expediting" Plaintiff's application on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Along with the first factor, "the fourth factor is considered 'among the most important'" *TRAC* factors. *Mirbod*, 2025 WL 418518, at *4 (citing *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)). Defendants claim that Plaintiff's sons' "visa applications are among hundreds of thousands of immigrant visa applications being adjudicated worldwide," and, if Defendants were ordered to adjudicate Plaintiff's sons' visa applications, it would "'simply move all other [applications] back one space and produce no net gain.'" ECF No. 6 at 12 (quoting *Mashpee*, 336 F.3d at 1101)). Plaintiff argues that, even if this were true, Defendants fail to provide any evidence showing that if Plaintiff's requested relief was granted that any such reordering would actually occur. ECF No. 9 at 27.

Considering the massive amounts of applications reviewed and issued each month, *see Monthly Immigrant Visa Issuance Statistics*, U.S. DEP'T OF STATE, available at: https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/immigrant-visa-statistics/monthly-immigrant-visa-issuances.html (last visited Sept. 28, 2026), this Court agrees with Defendants that expediting one application would necessarily come at the expense of thousands of other applications. *See, e.g.*, *Zagnoon v. Blinken*, 2023 WL 7279295, at *4 (W.D. Wis. Nov. 3, 2023) ("Although there is no data about the queue of people waiting to complete administrative processing, the Department of State's website shows that there is generally a significant immigrant visa backlog," such that expediting an application would likely "'reorder a queue'" of visa applicants") (quoting *Tate*, 513

F.Supp.3d at 149)); *Infracost*, 732 F. Supp. 3d at 1257 ("[E]xpediting plaintiffs' applications would 'necessarily come at the expense of other similarly situated applicants.'") (quoting *Da Costa*, 80 F.4th at 338-40)); *Mirbod*, 2025 WL 418518, at *4 ("'[o]ne need not unearth the details of the visa-adjudication process … to surmise that the relief Plaintiffs seek would reorder [Department] priorities.'") (quoting *Rashidi v. U.S. Dep't of State*, 2023 WL 6460030, at *6 (D.D.C. Oct. 4, 2023); *Davila*, 2024 WL 711618, at *8 ("reason suggests that many applicants other than Plaintiff's spouse are similarly awaiting the finalization of their visa applications" and "prioritizing the administrative processing" of one application "would merely bump Plaintiff up in the queue of other applicants"). Given the realities of the situation, the fourth factor weighs in Defendants' favor.

**4. Factor Six: Agency Impropriety**

The final *TRAC* factor asks whether the agency's delay is intentional or otherwise caused in bad faith. This factor does not look to the delay itself, but whether the underlying reason for the delay is one rooted in bad faith. *Mosayebian*, 2024 WL 3558378, at *11. Plaintiff admits that he does not allege intentional impropriety by Defendants. ECF No. 9 at 28. Nonetheless, factor six is neutral as "the absence of impropriety does not weigh against Plaintiffs." *Mosayebian*, 2024 WL 3558378, at *11 (citing *TRAC*, 750 F.2d at 80); *see, e.g.*, *Mirbod*, 2025 WL 418518, at *5 (similarly finding the sixth factor neutral, despite plaintiffs failure to allege improper reason behind delay).

**5. *TRAC* Conclusion**

In sum, factors one, two, and four weigh strongly in Defendants' favor, whereas only factors three and five weigh strongly in Plaintiff's favor, and factor six is neutral. Using the *TRAC* factors as guidance, Plaintiffs have failed to state either an APA or Mandamus Act claim based on unreasonable delay. *See, e.g.*, *Mojtabavi*, 2024 WL 5316832, at *1, 6 (granting motion to dismiss for 22-month delay for I-130 application by U.S. citizen on behalf of Iranian citizen and resident father); *Mosayebian*, 2024 WL 3558378, at *1, 12 (granting motion to dismiss for I-130 in administrative processing for eleven months

following consular interview).

The Court dismisses Plaintiff's First and Second Causes of Action under the APA and Mandamus Act. The Court appreciates, however, the impact the prolonged delay has had on Plaintiffs. Should the delay continue for a more extended period, judicial intervention may be warranted.

**E. Plaintiff's Due Process Claim Fails**

Plaintiff also alleges that the delay in adjudicating his sons' visa applications constitutes a deprivation of his procedural and substantive due process rights.

Procedural due process rights attach to "liberty interests" rooted in law, such as statute. *Khachatryan v. Blinken*, 4 F.4th 841, 855 (9th Cir. 2021). To succeed on a due process claim, "a plaintiff must show that there [is] a cognizable liberty or property at stake." *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011). Here, Plaintiff claims that, "[a]s a U.S. citizen, he retains a protected liberty interest in the enforcement of 8 U.S.C. § 1202(b), alongside 5 U.S.C. § 555(b) and § 706(1)[.]" ECF No. 9 at 29. But there is nothing in 8 U.S.C. § 1202(b) or 5 U.S.C. § 555(b) and § 706(1) guaranteeing Plaintiff a protected liberty or property interest in his sons' visa applications or immigration to the United States. Alleged violations of the "visa application procedures cannot violate the Due Process Clause because '[w]hatever the procedure authorized by Congress is, it is due process.'" *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 20 (D.D.C. 2022) (quoting *Knauff v. Shaughnessy*, 338 U.S. 547, 544 (1950)). Therefore, Plaintiff's procedural due process claim must fail.

Plaintiff also claims Defendants' delay constitutes a violation of his substantive due process rights based on his fundamental "right to maintain his familial relationships" and "family unity." ECF No. 9 at 29. Plaintiff cites two cases for support. *Id*. However, each supporting citation relates to the fundamental right to marriage—not the fundamental right for a parent to have his adult sons admitted to the United States. *See Dep't of State v. Muñoz*, 602 U.S. 899 (2024) (analyzing whether an unenumerated constitutional right exists for a citizen to bring their noncitizen spouse to the United States); *Obergefell v.*

*Hodges*, 576 U.S. 644 (2015) (holding that the right to marry is fundamental for same-sex couples). And, in *Muñoz*, the Supreme Court affirmatively found that no fundamental right exists for a United States citizen to bring their noncitizen spouse to the United States. 602 U.S. at 903. Therefore, Plaintiff has provided no support for his claim that he has a constitutionally protected liberty interest in his sons' visa applications.

The Supreme Court has never "suggested that whatever protection applies to extended-family relationships entails a constitutionally rooted expectation that one will be allowed to bring one's parents or adult children into the United States." *Khachatryan*, 4 F.4th at 862. Further, in the Ninth Circuit, it is well-established that a parent does not have "a constitutionally protected liberty interest in the denial of his non-citizen adult child's visa application sufficient to state a due process claim[.]" *Chheng v. U.S. Dep't of Homeland Sec.*, 2023 WL 5665763, at *1 (9th Cir. Sept. 1, 2023) (applying *Khachatryan*'s reasoning to determine there is no constitutionally protected parent-child interest in visa application denials). Accordingly, the Court finds Plaintiff's substantive due process claim must fail.

For these reasons, the Court dismisses Plaintiff's Third Cause of Action because he does not have a constitutionally protected interest in the adjudication of his sons' visa applications. This Court dismisses Plaintiff's claim with prejudice and without leave to amend because the claim cannot be cured by any further amendment. *Chheng*, 2023 WL 5665763, at *2 (affirming "dismissal without leave to amend" because "'the pleading could not possibly be cured by the allegation of other facts'") (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 6):

1. The Court **DENIES** Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).
2. The Court **GRANTS** Defendants' motion to dismiss for failure to state an APA

and/or Mandamus claim because the delay in adjudicating Plaintiff's visa applications is not unreasonable. Refiling may be appropriate should future circumstances indicate unreasonable delay requiring judicial review. The dismissal is, therefore, **WITHOUT PREJUDICE**.

3. The Court **GRANTS** Defendants' motion to dismiss for failure to state a violation of due process and dismisses the Third Cause of Action **WITH PREJUDICE**.

**IT IS SO ORDERED**.

Dated: September 30, 2026

Honorable Benjamin J. Cheeks
United States District Judge